TELECON, INC. *vs.* EMERSON-SWAN, INC.

Norfolk.   March 8, 1984. — April 2, 1984.

Present: GRANT, CUTTER, & KASS, JJ.

*Contract,* Modification, Performance and breach.  *Evidence,* Hearsay, Operative words.

Although it appeared that the judge in a contract action may have erred in excluding evidence of an oral modification of the contract which would have been admissible under the operative statement exception to the hearsay rule, this court declined to consider the issue on the basis of portions of the transcript reproduced in the defendant's brief, where the relevant portions of the transcript were not included in the appendix, where the defendant had not obtained leave to refer to portions of the record not included in the appendix, and where reversal of the judgment was required for other reasons.  [672-674]

A provision in a contract requiring written notice of the defendant's rejection of the plaintiff's recommendations respecting the defendant's telephone system was interpreted as involving no more than the defendant's acknowledgement that the ideas underlying the recommendations had originated with the plaintiff, rather than as making the defendant liable for contingent compensation to the plaintiff if it failed to give such notice, although this court recognized that this interpretation might be affected by evidence not apparent on the record.  [674-675]

CIVIL ACTION commenced in the Superior Court Department on August 25, 1982.

The case was heard by *Meyer,* J.

*Morris G. Nicholson* for the defendant.

*Stephen E. Woods* for the plaintiff.

CUTTER, J.  Telecon, Inc. (Telecon) and the defendant (E-S) made a written contract under which Telecon was to survey E-S's telephone system in an effort to achieve "the same or an improved service [to E-S] at a reduced cost based on rates . . . in effect [on] the date of" the contract.  The contract provided (by par. 4 of E-S's undertakings) that E-S would "forward a de-

cision to" Telecon within thirty days after Telecon's recommendations were received, "which recommendations . . . [would] be deemed accepted if written rejection" was not tendered by E-S "within the [thirty-day] period" by mail to a specified address. This contract provision is hereinafter called the "rejection requirement."

Telecon's complaint alleged that it had fully performed the agreement but had not been paid the agreed compensation by E-S. The trial judge, sitting by agreement without a jury, found that Telecon submitted to E-S recommendations (reports numbered #2 through #5 and a further report #6 for which Telecon never sent a bill), but that E-S never within "thirty days after receipt of each report" objected in writing to Telecon's recommendations. The trial judge decided that E-S had not performed its part of the contract and ordered judgment for Telecon for $3,578.86, plus interest, from the date of E-S's receipt of Telecon's bill, and costs. E-S appealed.

1. E-S contends that the trial judge erred in excluding evidence (as to which E-S made an offer of proof) about a conference on or about March 23, 1978, at which Telecon's general manager, John T. Hearon, allegedly told Joseph Swan of E-S, that Telecon would accept an oral statement by E-S, that it was "not going to implement" Telecon's recommendations. This apparently was to be in lieu of the written notice of such rejection called for in the "rejection requirement," already mentioned. If authorized by Telecon, such an oral modification of the written contract, or waiver of the requirement, could have been found to have been effective. See *Cummings* v. *Arnold,* 3 Met. 486, 489-494 (1842); *Lampasona* v. *Capriotti,* 296 Mass. 34, 37-38 (1936); *Capitol Bank & Trust Co.* v. *Pre-Schools, Inc.,* 10 Mass. App. Ct. 907 (1980); Restatement (Second) of Contracts §§ 84, 89, 150 (1981); Corbin, Contracts §§ 574 (at 372-373), 752-753, 759, 1294 (1960). Evidence of an oral agreement to modify the original contract, or of an oral waiver of a condition of that contract, would not have been inadmissible as hearsay, for such evidence would have been attempted proof of an "operative" statement not within the hearsay rule. See *Glassman* v. *Barron,* 277 Mass. 376, 382 (1931); 6 Wig-

more, Evidence § 1770 (Chadbourn rev. 1976); Liacos, Handbook of Massachusetts Evidence 265 (5th ed. 1981); McCormick, Evidence § 249 (2d ed. 1972); Hughes, Evidence § 453(1) (1961).

No portions of the transcript appear in the record appendix. To show that the trial judge wrongly excluded evidence of an oral modification or waiver of the "rejection requirement," some resort to the transcript is necessary. At least as a discretionary matter, we could decline to pass upon the issue argued where the necessary portion of the transcript has not been included in the record appendix. *Kunen* v. *First Agricultural Natl. Bank,* 6 Mass. App. Ct. 684 (1978). See *S. Kemble Fischer Realty Trust* v. *Board of Appeals of Concord,* 9 Mass. App. Ct. 477, 478-479 n.3 (1980); *Iverson* v. *Board of Appeals of Dedham,* 14 Mass. App. Ct. 951 (1982). No leave to refer to portions of the record not included in the appendix was obtained by E-S prior to argument. See Mass.R.A.P. 18(a), as appearing in 378 Mass. 940 (1979), reading in part, "The fact that parts of the record are not included in the appendix shall not prevent the parties *or the court* from relying on such parts, provided that the court may decline to permit the parties to refer to portions of the record omitted from the appendix, *unless leave be granted prior to argument*" (emphasis supplied). Unless such leave is obtained, litigants should not assume that this court will take advantage of its freedom to make use of portions of the record not included in the appendix. See the cases just cited, and *O'Brien* v. *Municipal Court,* 10 Mass. App. Ct. 851 (1980); *Plakas* v. *Plakas,* 11 Mass. App. Ct. 922 (1981), and the *Iverson* case, 14 Mass. App. Ct. at 952.

E-S, in its brief, has reproduced the portion of the transcript which contains (a) the trial judge's exclusion of the evidence about what Telecon's general manager told E-S's representative on March 23, 1978, and (b) the offer of proof, already mentioned, made by counsel for E-S. Telecon in its brief apparently does not contend that these excerpts from the transcript in E-S's brief are inaccurate. Telecon suggests, however, that preceding material in the transcript (not reproduced in E-S's brief) may have been in part the basis of the judge's ruling. That

ruling seems to have rested on his mistaken impression that the conversation constituted an admission (of a type which is an exception to the hearsay rule) rather than an oral operative statement resulting in modification of the contract, or waiver of one of its provisions.

We could treat the E-S excerpt from the transcript as essentially an agreed addition to the record appendix in order to prevent the trial judge's mistaken impression from causing a possible injustice. We do not do so, in part because there must be a new trial in any event. This will permit reconsideration, on the evidence then presented, of the issue whether the substance of what was said at the conference on March 23, 1978, resulted in modification of the contract or a waiver.

2. Telecon was to receive $1,000 as initial compensation for its services. Telecon might also become entitled to an additional contingent fee based on E-S's savings and refunds on its telephone services during the twenty-four months beginning on the date of E-S's acceptance of Telecon's recommendations. There was, however, to "be no contingent fee until . . . [E-S] *realizes* [$1,000 of] agreed savings . . . or refunds" (emphasis supplied) based on Telecon's recommendations. Thereafter Telecon was to be entitled to thirty percent of such savings and fifty percent of such refunds.[1]

E-S contends that (because it did not carry the recommendations into effect at all and thus has not *realized* any savings or refunds) it has not become subject to any liability to Telecon under the contract. We perceive no undertaking in the contract by E-S to carry out any of Telecon's recommendations unless such an undertaking can be implied from the "rejection requirement." On the present record, that provision is too ambiguous and too general in terms to be viewed as more than E-S's acknowledgement that the ideas for refunds or savings originated with Telecon. Such an acknowledgement would have the consequence that, if E-S should make use of any recommenda-

---

[1]E-S also had agreed that rejected Telecon recommendations would "not be implemented" for twelve months and if "implemented prior to this," Telecon would receive its share of the consequent savings.

tions within the stipulated period of twenty-four months, it would become liable to Telecon for the agreed contingent compensation for savings and refunds *realized*.

E-S's inaction upon Telecon's recommendations does not impress us as amounting to prevention of any performance by Telecon. Compare *O'Malley* v. *Markus,* 339 Mass. 766, 768-769 (1959); *Frank Fitzgerald, Inc.* v. *Pacella Bros. Inc.,* 2 Mass. App. Ct. 240, 242 (1974); Corbin, *supra,* §§ 767-771. It also does not seem to us to be, in itself, a breach of contract by E-S. We think that, by the contract, Telecon assumed the risk that E-S might decide that the results of Telecon's recommended changes were too uncertain, speculative, or costly to warrant any effort by E-S to put them into effect.

Our interpretation of the contract on this record, of course, is made without the benefit of any evidence which might explain and clarify the "rejection requirement." Accordingly, we merely reverse the judgment and remand the case for further proceedings consistent with this opinion.

*So ordered.*