Earl GUNSBY, Petitioner-Appellee,

v.

Louie L. WAINWRIGHT, Secretary, Department of Offender Rehabilitation, Respondent-Appellant.

No. 78–2364.

United States Court of Appeals, Fifth Circuit.

June 6, 1979.

Robert L. Shevin, Atty. Gen., Charles Corces, Jr., Asst. Atty. Gen., Tampa, Fla., for respondent-appellant.

J. Richard Rahter, St. Petersburg, Fla. (Court-appointed), for petitioner-appellee.

Before THORNBERRY, CLARK and RO-NEY, Circuit Judges.

RONEY, Circuit Judge:

This case involves the proper application of *Hutto v. Ross*, 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976), to the admissibility of (1) a statement made by a defendant to the prosecutor, and (2) a deposition taken of the defendant under subpoena from a codefendant, both after a plea bargain, which was later set aside at the Government's request. After an evidentiary hearing, the district court held that both the statement and the deposition were legally involuntary, and therefore inadmissible in the state trial because they violated the defendant's constitutional right against self-incrimination. On Florida's appeal from the grant of the writ of habeas corpus, we affirm.

Earl Gunsby, charged with robbery, negotiated a plea bargain whereby he agreed to plead guilty to robbery and testify against two codefendants in exchange for a maximum sentence of 7½ years and no objection from the State to a probated sentence.

Shortly after entering the guilty plea, Gunsby made a statement to the prosecutor in which he incriminated himself and a co-defendant. Gunsby's testimony at trial, however, tended to exculpate rather than incriminate the codefendant, who was acquitted.

The State then moved to vacate Gunsby's plea agreement, contending that Gunsby had made inconsistent statements and thus violated the plea agreement. A show cause order issued and a hearing was set.

Before the hearing, however, Gunsby appeared at a deposition in response to a subpoena issued by another codefendant who had not yet been tried. Gunsby again incriminated himself.

Despite Gunsby's contention that his statements were not inconsistent, the plea bargain was set aside. Gunsby's motion to suppress both the statement and the deposition was denied and both were introduced at trial. He was convicted of robbery and given a 20-year sentence. The state appellate court affirmed. *Gunsby v. State*, 316 So.2d 313 (Fla.Dist.Ct.App.1975).

Gunsby petitioned the federal court for a writ of habeas corpus contending his right against compulsory self-incrimination under the Fifth Amendment had been violated. Although the petition was originally granted, this Court remanded for an evidentiary hearing on the issue of whether Gunsby's inculpatory statements were part of the plea bargain so that *Hutto v. Ross*, 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976), could be properly applied. *Gunsby v. Wainwright*, 552 F.2d 127 (5th Cir. 1977). The district court again granted the writ of habeas corpus from which the State appeals.

■ The State's contention that the federal district court erroneously disregarded the findings of the state trial court without finding that its determination was inadequate under one of the grounds enumerated in 28 U.S.C.A. § 2254(d) and *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), overlooks the nature of the state court's determination. The issue of voluntariness in a situation such as presented here involves mixed questions of law and fact. It is well settled that such questions do not fall within the scope of § 2254(d). *Mason v. Balcom*, 531 F.2d 717, 721–722 (5th Cir. 1976); *Lee v. Hopper*, 499 F.2d 456, 462 (5th Cir. 1974), *cert. denied*, 419 U.S. 1053, 95 S.Ct. 633, 42 L.Ed.2d 650 (1974); *Davis v. Heyd*, 479 F.2d 446, 449 (5th Cir. 1973).

Conceding the difficulty of overturning a finding made by a federal district judge, the State does not contest the district court's determination that the statement made to the prosecuting attorney was legally involuntary. *See* Fed.R.Civ.P. 52(a); *Collier v. Estelle*, 506 F.2d 22, 24 (5th Cir. 1975). Looking to what evidence may be available for a new trial, the State contests the district court's ruling on the inadmissibility of the deposition.

■ The district court appears eminently correct on both counts. In *Hutto v. Ross*, 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976), the Supreme Court rejected a *per se* rule of inadmissibility where a confession is

made as a result of a plea bargain. In that case the plea bargain did not call for a confession. Against the advice of his attorney, Hutto made a statement in which he incriminated himself, even though it was made clear to him that the terms of the plea bargain would continue to be available to him without such a statement. The plea bargain was later withdrawn and the confession introduced at Hutto's trial. The Court held that the confession was not the result of any direct or implied promise and was voluntarily given. Conversely, a confession given as the result of a direct or implied promise would be legally involuntary.

Here, Gunsby made the statement to the prosecutor as a result of the promises made by the State in the plea bargain. That the original statement was part of the plea bargain is demonstrated by the fact that the State obtained nullification of the plea bargain on the ground that Gunsby's testimony at a codefendant's trial was inconsistent with that statement. The district court's conclusion that the statement was legally involuntary and inadmissible at Gunsby's state trial was thus compelled under *Hutto*.

■ The decision as to the deposition is somewhat more difficult. Prior to taking the deposition, the State prosecutor made this statement:

Just for the record, I would like to make some prefacing statements just so it be understood, that number one, that it be noted Mr. Milton is here representing Mr. Gunsby in this case; that he is a co-defendant along with Gerald Suggs, and that there was an order entered on June 27, by David Patterson, to show cause if any, why, if any cause can be shown, Earl Gunsby's agreement and negotiated plea with the State of Florida should not be negated or set aside based on the inconsistent statements and testimony in the trial of a third defendant, Tony Smith. And that he is here now subpoenaed as a defense witness.

At first glance, the prosecutor's statement would seem to create a factual situation identical to that of *Hutto*. The ultimate test, however, is whether the deposition was voluntarily given by the petitioner. *See, e. g., United States v. Robertson*, 582 F.2d 1356, 1363 n. 14 (5th Cir. 1978). On this issue, the district court made detailed findings of fact which belie this first impression of voluntariness and distinguish the instant case from *Hutto*.

In a revealing preface to its findings, the district court stated:

The petitioner's exposure to and experience with the criminal justice system at the time of the offense was minimal. Gunsby, who was twenty-one years old when the robbery was committed, had had only minor brushes with the law and had never been convicted of a felony prior to the instant case. He had completed the ninth grade and part of the tenth. His testimony indicates a complete reliance on the advice of his attorney and a failure to appreciate either the basic elements or the nuances of the fifth amendment and teachings of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Court finds that the petitioner was not aware of the self-incriminating implications of either his statement or his deposition.

The court then made well-reasoned findings as to why the deposition was not legally voluntary.

Gunsby had been subpoenaed for the deposition by a co-defendant, Gerald Suggs. At the commencement of the deposition, counsel for the respondent made a statement regarding the pending motion to vacate the plea.

During the deposition the petitioner extensively inculpated himself and Gerald Suggs, and in general discussed the basic facts surrounding the robbery. The petitioner also discussed the planning of the robbery and the beating of Brown by Suggs and Harvey Baker. The petitioner was also questioned at the deposition by trial counsel for respondent, counsel for the co-defendant Suggs, and his own attorney.

At the evidentiary hearing before this Court, O'Leary testified his initial statement was to put the petitioner and his counsel on notice as to the pendency of the motion to vacate and the order to show cause. Counsel for the petitioner, Morris Milton, testified that he permitted the deposition of his client because the petitioner was bound by the plea agreement and he wanted to uphold the bargain. Milton stated that he was of the opinion that only a court order could revoke the bargain and the only way the state could use Gunsby as a witness was if he appeared at the deposition. Milton further testified that if the plea had been vacated prior to the deposition, he would not have permitted the petitioner to testify.

The Court is of the opinion that the deposition of the petitioner Gunsby was not voluntary on his part. The petitioner was subpoenaed for the deposition and his counsel, anxious to uphold the bargain, permitted the defendant to testify thinking the failure to do so would prejudice the petitioner's chances of maintaining the bargain. The respondent's counsel's statements at the commencement of the deposition are subject to various interpretations. The statement, which did not advise petitioner of the respondent's intention to use the testimony at the petitioner's trial if the motion to vacate was granted, could be interpreted as a threat to petitioner to inculpate Gerald Suggs or suffer the loss of the bargain. It could also be interpreted as a caveat relative to petitioner's fifth amendment privilege.

At the deposition the petitioner inculpated Suggs in the planning and commission of the robbery. Although the bargain with the state related to the petitioner's testimony at the Smith and Suggs trials, the Court is of the opinion the deposition was integrally related to the testimony and part and parcel with the bargain. (footnotes omitted).

After a discussion of the law concerning the statement to the prosecutor, the district court went on to give its conclusions of law as to the deposition.

Although the deposition presents a different factual setting, the assessment of the law is the same. Petitioner was subpoenaed to the deposition; he did not voluntarily present himself. Rule 3.220 of the Florida Rules of Criminal Procedure which permits depositions in criminal cases also provides that "a person who refuses to obey a subpoena served upon him may be adjudged in contempt of the court from which the subpoena issued." Although the Florida state courts have adopted the position that the prosecution is not responsible for the production of its own witnesses at deposition, the prosecution and the nonappearing witness are subject to definite sanctions. *Fla.R.Cr. Pro.* 3.220(j); *State v. Roig*, 305 So.2d 836 (3d D.C.A.Fla.1974); and *State v. Deville*, 258 So.2d 492 (3d D.C.A.Fla.1972).

In the present circumstance, the petitioner had a bargain with the state to testify against the co-defendant Suggs who had subpoenaed him for the deposition. The possibility of the imposition of sanctions against the petitioner through the Florida Rules of Criminal Procedure was clear, but the possibility of other sanctions, specifically the revocation of the plea agreement, was also looming in the foreground. The respondent argues that the motion to vacate, the order to show cause, and the statement of counsel at the beginning of the deposition placed the petitioner on notice as to the possibilities of non-compliance with the bargain. There is no doubt that the petitioner was on notice at the time of the deposition, but the question is as to what. Respondent argues that the petitioner was on that notice that his statement at the deposition might be used against him. Petitioner argues that he was on notice only that non-compliance would result in revocation. Since the petitioner was satisfied with the plea bargain and wanted it enforced, he testified at the deposition so that he could testify at the trial without complications. The deposition inculpated the petitioner and also inculpated the co-defendant Suggs not only as an

accomplice in the robbery, but also as one of the two principal participants.

In *Bram [v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897)] the Supreme Court suggested consideration of whether the confession was extracted by any direct or implied promises. Here the promise was the bargain; the promise to testify against Suggs and Smith in return for a guilty plea and a seven and one-half year maximum for his sentence. The Court is convinced that the deposition was not voluntary, but part of the promise to testify and compelled by the subpoena. (footnotes omitted).

The district court found that the petitioner himself believed that he was compelled to testify in order to keep the plea bargain. Being so advised, he gave testimony of the kind contemplated by the plea bargain. At no time was he advised, as in *Hutto*, that he need not testify in order to retain the benefits of the plea bargain should the court refuse to nullify it, or that the State would not use his refusal to testify as additional ground for the motion to set aside the plea bargain. From these facts it thus appears that the court properly applied the law. Therefore, its determination that both the statement and the deposition were involuntary, and thus inadmissible at the State trial, must be affirmed.

█ In its decree, however, the district court also provided:

> In the event petitioner is convicted after a new trial his sentence shall not exceed the sentence imposed at his original trial· . . . .

This portion of the order was premature, and must be vacated. Although *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), prohibits an increased sentence where vindictiveness plays a part in the sentencing process, it does not impose an absolute bar to a more severe sentence on retrial. Should a conviction result from the new trial, the State would be free to show "identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding" that would justify an increased sentence. *Id.*, 395 U.S. at 726, 89 S.Ct. at 2081. Since the facts regarding petitioner's post-sentencing conduct are not now known, an absolute bar to a more severe sentence cannot properly be imposed under *Pearce*. The portion of the order quoted above is, therefore, vacated.

**AFFIRMED IN PART AND VACATED IN PART.**